Filed 3/5/25; Certified for Publication 4/3/25 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ALLAN GUMARANG, <br><br> Plaintiff, Cross-defendant and Appellant, <br><br> v. <br><br> BRAEMER ON RAYMOND, LLC, et al., <br><br> Defendants, Cross-complainants and Respondents. | B323083, B325256 <br><br> (Los Angeles County Super. Ct. No. 20STCV09118) |

APPEALS from orders of the Superior Court of Los Angeles County. Yolanda Orozco, Judge. Affirmed.

Citron & Citron, Thomas H. Citron, and Katherine A. Tatikian for Plaintiff, Cross-defendant and Appellant.

Bradley, Gmelich & Wellerstein, Thomas P. Gmelich, Lena J. Marderosian, Dean A. Reeves, and Mark I. Melo for Defendants, Cross-complainants, and Respondents Braemer-Caledonia Company et al.

Tyson & Mendes, David M. Frishman, and Aaron J. Weissman for Defendant, Cross-complainant, and Respondent Braemer on Raymond, LLC.

_____

## INTRODUCTION

Plaintiff and cross-defendant Allan Gumarang appeals from the trial court's order granting in part and denying in part his special motion to strike under Code of Civil Procedure section 425.16 (anti-SLAPP statute),[1] directed at the cross-complaint filed by defendants and cross-complainants Braemer on Raymond, LLC; Braemer-Caledonia Company; M&A Real Estate Services, Inc.; and Deanne Cantu.[2] Gumarang also appeals from the court's order denying his request for attorney fees under the anti-SLAPP statute. As we explain, the court properly denied in part Gumarang's special motion to strike. We also conclude the court did not abuse its discretion when it

_____

[1] All further undesignated statutory references are to the Code of Civil Procedure.

[2] Braemer-Caledonia Company, M&A Real Estate Services, Inc., and Cantu filed a respondent's brief addressing both the court's order denying in part Gumarang's anti-SLAPP motion and its order denying Gumarang's attorney fees motion. Braemer on Raymond, LLC, which dismissed its cross-claims against Gumarang before the court ruled on his anti-SLAPP motion, filed a respondent's brief addressing only the court's order denying Gumarang's attorney fees motion. To avoid confusion when addressing the two sets of respondents, we refer to Braemer on Raymond, LLC as "Lessor," and Braemer-Caledonia Company, M&A Real Estate Services, Inc., and Cantu as "Management."

denied Gumarang's request for attorney fees.  Accordingly, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### 1.    The lease

In May 2016, Lessor and Gumarang executed a "Standard Multi-Tenant Shopping Center Lease" (Lease) through which Lessor agreed to lease to Gumarang commercial property (Property) in Pasadena for seven years.  Gumarang intended to use the Property to operate an ice cream parlor.  Gumarang personally guaranteed the Lease.

Several provisions of the Lease address the parties' respective rights and obligations.  Under Paragraph 7.2, Lessor must, among other things, "keep in good order, condition and repair the foundations, exterior walls, structural condition of interior bearing walls, exterior roof, fire sprinkler system, Common Area fire alarm and/or smoke detection systems, fire hydrants, parking lots, walkways, parkways, driveways, landscaping, fences, signs and utility systems serving the Common Areas . . . ."

Paragraph 8.2 requires Gumarang to obtain general liability insurance with a minimum coverage limit of $1,000,000 to protect himself and Lessor against "claims for bodily injury, personal injury and property damage based upon or arising out of the ownership, use, occupancy or maintenance" of the property.

Paragraph 8.7 of the Lease, entitled "Indemnity," provides: "Except for Lessor's gross negligence or willful misconduct, Lessee shall indemnify, protect, defend and hold harmless the Premises, Lessor and its agents, Lessor's master or ground lessor, partners and Lenders, from and against any and all claims, loss of rents and/or damages, liens, judgments, penalties, attorneys'

3

and consultants' fees, expenses and/or liabilities arising out of, involving, or in connection with, the use and/or occupancy of the Premises by Lessee.  If any action or proceeding is brought against Lessor by reason of any of the foregoing matters, Lessee shall upon notice defend the same at Lessee's expense by counsel reasonably satisfactory to Lessor and Lessor shall cooperate with Lessee in such defense.  Lessor need not have first paid any such claim in order to be defended or indemnified."

Paragraph 8.8, entitled "Exemption of Lessor and its Agents from Liability," states that notwithstanding Lessor's or its agents' negligence or breach of the Lease, neither Lessor nor its agents could be held liable for any injury or loss arising on or from the property, including damage or injury caused by fire.  Instead, Paragraph 8.8 provides, Gumarang's "sole recourse in the event of such damages or injury [shall] be to file a claim on the insurance policy(ies) that [Gumarang] is required to maintain pursuant to the provisions of Paragraph 8."

## 2. The fire

In February 2017, after spending approximately eight months renovating the Property, Gumarang opened his ice cream parlor.  In October 2017, a fire destroyed the Property.

The Pasadena Fire Department investigated the fire and later released an investigation report.  According to the report, the fire originated in the Property's rear storage room.  There were no "fire stops" in the walls of that room, and the Property did not have functioning fire protection or alarm systems.  The report concluded that the fire was accidental and most likely caused by "a non-specific electrical failure within an interior wall of the structure."

### 3. Gumarang's lawsuit

In March 2020, Gumarang filed this lawsuit. In January 2021, he filed the operative second amended complaint against Lessor, Management, and others to recover damages stemming from the fire that destroyed the Property. Against Lessor and Management, Gumarang asserted causes of action for breach of contract, negligence, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, negligent misrepresentation, and violations of Business and Professions Code section 17200 et seq. Gumarang alleged that Lessor and Management failed to ensure the Property was equipped with, among other things, electrical and fire prevention systems that were in good working condition, which caused the fire that destroyed the Property. Gumarang also alleged that Management failed to notify him that the Property lacked adequate electrical wiring and fire prevention systems before he executed the Lease.

### 4. Lessor and Management's demand for defense and indemnity

In February 2021, counsel for Lessor and Management sent Gumarang a letter demanding that he "defend and indemnify them and their agents . . . as required under the terms and conditions of the [Lease]" and to place his insurance "carrier on notice of this claim." Gumarang's counsel later denied Lessor and Management's request, claiming, among other things, that the Lease's indemnity clause applied only to claims brought by third parties.

In March 2021, counsel for Lessor and Management sent a similar demand letter to Gumarang's insurance carrier.

5

**5.  Lessor and Management's answer and cross-complaint**

In August 2021, Lessor and Management filed a cross-complaint against Gumarang, as well as other individuals and entities not party to this appeal.  The cross-complaint asserted the following causes of action against Gumarang: (1) comparative indemnity and apportionment of fault; (2) total equitable indemnity; (3) declaratory relief; (4) contractual indemnity; (5) breach of contract; (6) declaratory relief; and (7) declaratory relief.

Lessor and Management's cross-claim for comparative indemnity and apportionment of fault alleged that Gumarang was responsible for causing the damages at issue in his second amended complaint, and that he should be held liable for the share of his judgment that is in proportion to his own negligence. The cross-claim for equitable indemnity alleged that to the extent Lessor and Management are held liable for the damages at issue in Gumarang's second amended complaint, they would be entitled to complete indemnity from Gumarang because "any liability would be based solely upon a derivative form of liability not resulting from [Lessor's and Management's] conduct, but only from an obligation imposed upon [them] by law."  As for their first declaratory relief cross-claim, Lessor and Management sought a declaration as to "the rights, responsibilities and obligations" of Gumarang as to Lessor and Management.

Lessor and Management's cross-claims for contractual indemnity, breach of contract, and declaratory relief all arise out of allegations that Gumarang agreed to defend and indemnify Lessor and its agents, including Management, against any claims arising out of his use or occupancy of the Property when he signed the Lease.  The cross-complaint's fourth and fifth causes of

action for contractual indemnity and breach of contract alleged that Gumarang breached the Lease when he refused to defend and indemnify Lessor and Management from any losses arising from Gumarang's occupancy of the Property, including the losses caused by the fire at issue in Gumarang's second amended complaint. The cross-complaint's sixth and seventh causes of action for declaratory relief sought declarations from the court that under the terms of the Lease, Gumarang is obligated to defend and indemnify Lessor and Management against any claims, losses, or damages arising out of his occupancy of the Property.

On the same day they filed their cross-complaint, Lessor and Management filed an answer to Gumarang's second amended complaint. The answer asserted affirmative defenses based on several theories underlying Lessor's and Management's cross-claims, including apportionment of fault, comparative fault, and comparative indemnity.

## 6. Gumarang's insurance provider agrees to defend Lessor

In mid-September 2021, Gumarang's insurance carrier notified counsel for Lessor and Management that it would defend Lessor, but not Management, against the claims raised in Gumarang's lawsuit because only Lessor was named as an insured in Gumarang's insurance policy. After agreeing to defend Lessor, the insurance carrier provided new counsel to represent Lessor.

## 7. Gumarang's anti-SLAPP motion

Shortly after his insurance provider agreed to defend Lessor, Gumarang moved to strike Lessor's and Management's cross-complaint under section 425.16. Gumarang argued each of

the cross-complaint's causes of action arose out of his protected activity of filing his lawsuit against Lessor and Management. Gumarang also argued Lessor and Management could not demonstrate a probability of prevailing on any of their cross-claims because the Lease's indemnity provision applied only to claims brought by third party claims and, in any event, that provision was procedurally and substantively unconscionable.

Management opposed the anti-SLAPP motion.

In October 2021, Lessor dismissed all its cross-claims against Gumarang.

In June 2022, the court granted Gumarang's anti-SLAPP motion as to the cross-complaint's first three causes of action for comparative indemnity and apportionment of fault, total equitable indemnity, and the first cross-claim for declaratory relief, and it denied the motion as to the final four causes of action for contractual indemnity, breach of contract, and the remaining cross-claims for declaratory relief. As to the latter group of cross-claims, the court did not reach a conclusion as to whether they arose out of Gumarang's protected activity under section 425.16. Instead, the court found Management was likely to prevail on those cross-claims because the Lease's indemnity provision applied to disputes between the parties to the Lease and that provision was not unconscionable as applied to Gumarang.

## 8. Gumarang's attorney fees motion

In August 2022, Gumarang moved for $115,328.71 in attorney fees and costs under section 425.16, subdivision (c). Gumarang argued he was the prevailing party because the court granted his anti-SLAPP motion as to three of Management's cross-claims. According to Gumarang, he practically benefitted

by the court's ruling on his motion because it "resulted in significantly fewer factual allegations remaining to be litigated, discovery and motion practice have been narrowed, future litigation expenses will be significantly decreased and the parties' litigation strategy was significantly impacted by the Anti-SLAPP motion."

Lessor and Management opposed Gumarang's attorney fees motion. Lessor argued Gumarang was not entitled to recover any attorney fees under section 425.16, subdivision (c) because, among other reasons, Lessor dismissed its cross-claims against Gumarang in response to Gumarang's insurer accepting Lessor's tender for defense and indemnity under the Lease, not because of Gumarang's anti-SLAPP motion. Management argued Gumarang was not entitled to recover attorney fees because he was not a prevailing cross-defendant, as the practical benefits of his partially successful anti-SLAPP motion were minimal and insignificant.

The court denied Gumarang's motion, finding he was not a prevailing party for purposes of section 425.16, subdivision (c), even though he succeeded in dismissing three of Management's cross-claims. The court explained that the anti-SLAPP motion did not practically benefit Gumarang "because the three cross-claims that were dismissed remain as affirmative defenses in [Management's] answer and the possible recovery against [Management] did not change, nor did the factual allegations that [Gumarang] must prove to prevail against [Management]." The court also found that Lessor dismissed their cross-claims against Gumarang because his insurer accepted Lessor's tender for defense and indemnity under the Lease, and not because of Gumarang's anti-SLAPP motion.

9

Gumarang appealed from the court's orders denying in part his anti-SLAPP motion and denying his attorney fees motion. We consolidated both appeals.

## DISCUSSION

### 1. The court did not err when it denied in part Gumarang's anti-SLAPP motion

Gumarang contends the court erred when it denied his anti-SLAPP motion as to Management's cross-claims for contractual indemnity, breach of contract, and declaratory relief concerning Gumarang's obligations under the Lease's indemnity provision. According to Gumarang, those cross-claims arise from his protected activity of filing the underlying lawsuit because they seek to hold him liable for suing Management to recover damages from the destruction of the Property. Gumarang also asserts that Management failed to show a probability of prevailing on any of those cross-claims because the Lease's indemnity provision is unenforceable. As we explain, the court properly denied Gumarang's anti-SLAPP motion because none of the challenged cross-claims arise from his protected activity.

#### 1.1. Applicable law and standard of review

Under the anti-SLAPP statute, a cross-defendant may move to strike cross-claims arising from certain speech or petitioning activity. (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884 (*Wilson*); see also § 425.16, subd. (h) [cross-complaints are treated the same as complaints, and cross-defendants are treated the same as defendants].) The statute creates a two-step process through which the cross-defendant must first show the challenged causes of action arise from protected activity, meaning "any act . . . in furtherance of the [cross-defendant's] right of petition or free speech . . . in connection with a public issue." (§ 425.16, subd. (b)(1).)

10

To determine whether the challenged causes of action arise from protected activity, we look at the "pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2); see also *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.)

Under section 425.16, subdivision (e), an " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (*Ibid*.)

If the cross-defendant succeeds at showing the challenged cross-claims arise out of its protected activity, the burden shifts to the cross-complainant to demonstrate a probability of prevailing on those claims; otherwise, the court must strike them. (*Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 619–620.) However, if the cross-defendant fails to demonstrate that any of the challenged cross-claims arise from protected activity, the trial court may deny the special motion to strike without addressing whether the cross-complainant has demonstrated a probability of success on its cross-claims. (*C.W.*

11

*Howe Partners Inc. v. Mooradian* (2019) 43 Cal.App.5th 688, 698 (*Mooradian*).)

We independently review an order granting or denying a special motion to strike under section 425.16. (*Wilson, supra*, 7 Cal.5th at p. 884.) We engage in the same two-step process as the trial court to determine if the parties have satisfied their respective burdens. (*Abuemeira v. Stephens* (2016) 246 Cal.App.4th 1291, 1298.) If the moving party fails to show that the challenged claims arise from protected activity, we may affirm the trial court's denial of the special motion to strike and need not address whether the nonmoving party has demonstrated a probability of success. (*Ibid.*)

### 1.2. Management's cross-claims do not arise out of Gumarang's protected activity

The parties do not dispute that Management's cross-claims for contractual indemnity, breach of contract, and declaratory relief concerning Gumarang's obligations under the Lease's indemnity provision are all premised on common factual allegations. The parties disagree, however, on what those common allegations are. According to Gumarang, Management's cross-claims arise out of his protected activity of suing Management to recover damages from the destruction of the Property. Management, on the other hand, asserts that the cross-claims arise out of Gumarang's nonprotected activity of breaching the Lease's indemnity provision by refusing to defend and indemnify Management against any claims, losses, or damages arising out of his use or occupancy of the Property, including the damages to the Property at issue in Gumarang's lawsuit. As we explain, we agree with Management that its

12

challenged cross-claims do not arise out of Gumarang's protected activity.

As our Supreme Court explained, a "claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1062 (*Park*).) To qualify as protected conduct under section 425.16, the cross-defendant's act underlying the challenged cause of action must itself be an act in furtherance of the right of petition or speech. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 (*City of Cotati*).) Put another way, a " 'claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted.' " (*Wilson*, *supra*, 7 Cal.5th at p. 884.)

It is not sufficient that the challenged cross-claims were filed in response to the cross-defendant's claims. (*City of Cotati*, *supra*, 29 Cal.4th at p. 77.) Likewise, it is not sufficient that the cross-claims may have been triggered by, or filed in retaliation for, the cross-defendant's litigation conduct. (*Ibid.*) Otherwise, nearly all cross-claims would satisfy the first prong of the anti-SLAPP statute's two-step analysis, regardless of what conduct in fact forms the basis for the cross-claims. (*Id.* at pp. 76–77.) Instead, the focus under section 425.16's first prong is on the cross-defendant's conduct that gives rise to his or her asserted liability, and whether that conduct constitutes protected speech or petitioning activity. (*Park*, *supra*, 2 Cal.5th at p. 1063, quoting *Navellier v. Sletten* (2002) 29 Cal.4th 82, 92.) "In short, in ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claim and what actions by the [moving party]

13

supply those elements and consequently form the basis for liability." (*Park*, at p. 1063.)

Here, all the challenged cross-claims are based on allegations that the Lease's indemnity provision requires Gumarang to defend and indemnify Management against claims arising out of his use or occupancy of the Property. Express, or contractual, indemnity "refers to an obligation that arises ' "by virtue of express contractual language establishing a duty in one party to save another harmless upon the occurrence of specified circumstances." ' " (*Prince v. Pacific Gas & Electric Co.* (2009) 45 Cal.4th 1151, 1158.) A claim for contractual indemnity is akin to a claim for breach of contract. (See *Mooradian*, *supra*, 43 Cal.App.5th at p. 699.) Thus, a claim for contractual indemnity and breach of contract based on a refusal to honor an indemnity provision consist of the same elements: (1) the existence of an agreement containing a contractual indemnity provision; (2) the indemnitee's performance of the relevant provisions of the agreement; (3) a loss within the meaning of the indemnity agreement; and (4) damages sustained as a result of the breach of the indemnity agreement. (*Ibid*.; see also *Four Star Electric, Inc. v. F&H Construction* (1992) 7 Cal.App.4th 1375, 1380.)

Here, Gumarang's breach of Paragraph 8.7 of the Lease, which Management claims requires him to defend and indemnify Management against any losses or damages arising out of his use or occupancy of the Property, constitutes the wrongful conduct alleged in the challenged cross-claims. Specifically, Management alleges that Gumarang agreed to be bound by Paragraph 8.7 when he signed the Lease. In its cross-claims for contractual indemnity and breach of contract, Management alleges that

14

Gumarang breached that provision by failing to defend and indemnify Management against any claims arising out of Gumarang's use and occupancy of the Property, including those related to the destruction of the Property at issue in Gumarang's lawsuit.  In its cross-claims for declaratory relief, Management alleges that Gumarang was required, under Paragraph 8.7 of the Lease, to indemnify and defend Management against any claims arising out of his use or occupancy of the Property.

To be sure, Management references Gumarang's filing of the underlying lawsuit in its cross-complaint.  But that does not mean that Management's cross-claims arise from Gumarang's filing of that lawsuit.  Rather, those allegations simply support Management's claim that Gumarang breached the Lease's indemnity provision by refusing to defend and indemnify Management against any claims arising out of Gumarang's use or occupancy of the Property.  (See *Park*, *supra*, 2 Cal.5th at p. 1060 ["a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted"].)

*Mooradian*, *supra*, 43 Cal.App.5th and *Wong v. Wong* (2019) 43 Cal.App.5th 358 (*Wong*), both of which affirmed orders denying anti-SLAPP motions brought against claims seeking to enforce indemnity provisions, are on point.

In *Mooradian*, two homeowners sued several entities and persons involved with the renovation of their home.  (*Mooradian*, *supra*, 43 Cal.App.5th at pp. 691–694.)  The homeowners alleged, among other things, that the civil engineer with which they contracted to perform part of the renovation work was liable for incorporating into its design certain construction materials that

15

were not approved for use in residential construction within the homeowners' city. (*Id*. at p. 694.) The civil engineer and its principal filed a cross-complaint against the homeowners, asserting cross-claims for express indemnity, equitable indemnity, and contribution. (*Id*. at p. 695.) Relevant here, the civil engineer's express indemnity cross-claim alleged that the homeowners agreed to indemnification provisions in their agreement with the civil engineer, which required the homeowners to indemnify, defend, and hold harmless the engineer for any liability arising from the use of the construction materials at issue in the homeowners' lawsuit. (*Ibid*.) The homeowners filed an anti-SLAPP motion targeting the civil engineer's cross-claims, arguing they arose from the homeowners' protected activity of filing their complaint. (*Id*. at p. 696.) The trial court denied the homeowners' motion, finding the civil engineer's cross-claims did not arise from any protected activity. (*Id*. at p. 697.)

The appellate court affirmed. (*Mooradian*, *supra*, 43 Cal.App.5th at pp. 699–704.) It explained that not every "allegation of protected activity supporting an element of a cause of action subjects that cause of action to a challenge under section 425.16. . . . [I]n the first step of the anti-SLAPP analysis, care must be taken 'to respect the distinction between activities that form the basis for a claim and those that merely lead to the liability-creating activity or provide evidentiary support for the claim.' . . . [T]he Supreme Court in both *Park* and *Wilson* made clear 'the speech or petitioning activity *itself*' must constitute 'the wrong complained of.' " (*Id*. at pp. 700–701.)

Applying that analysis, the reviewing court concluded that the homeowners' act of filing their lawsuit was not the wrongful

16

act forming the basis for their liability as alleged in the civil engineer's cross-complaint. (*Mooradian*, *supra*, 43 Cal.App.5th at p. 701.) Instead, the court explained, the alleged wrongful act giving rise to the civil engineer's express indemnity cross-claim was the homeowners' failure to indemnify and defend the civil engineer in breach of the parties' agreement, including to indemnify the civil engineer from any liability arising from the use of the challenged construction materials. (*Ibid.*)

In *Wong*, a marital settlement agreement provided that an ex-husband would transfer to his ex-wife his ownership interest in an entity that owned commercial property and indemnify her from " 'any liabilities attendant thereto.' " (*Wong*, *supra*, 43 Cal.App.5th at p. 361.) The marital agreement also provided that the parties would indemnify each other for any undisclosed liabilities, including costs and attorney fees. (*Ibid.*) After the ex-husband and the ex-wife died, the entity that owned commercial property was required to pay off a $5 million promissory note. (*Id.* at p. 362.) That entity sued the ex-husband's estate to recoup the $5 million, and the ex-husband's estate later sued the ex-wife's estate for breach of contract and express and equitable indemnity to require the ex-wife's estate to indemnify the ex-husband's estate for the costs and liabilities stemming from the entity's lawsuit. (*Ibid.*) The ex-wife's estate filed an anti-SLAPP motion, claiming that it had directed and funded the entity's litigation to recoup the $5 million. (*Ibid.*) Therefore, the ex-wife's estate argued, the indemnity claims brought by the ex-husband's estate were based on the ex-wife's estate's protected litigation activity. (*Ibid.*) The trial court denied the anti-SLAPP motion. (*Id.* at pp. 362–363.)

17

The appellate court affirmed, concluding that the ex-wife's estate was sued for its breach of the indemnity provision in the marital settlement agreement, not for its role in pursuing litigation on behalf of the entity that owned commercial property. (*Wong*, *supra*, 43 Cal.App.5th at pp. 364–365.)  Thus, the claims brought by the ex-husband's estate did not arise out of any protected activity by the ex-wife's estate.  (*Id*. at p. 365.)

Similarly, in this case, it is not Gumarang's filing of the underlying lawsuit that forms the basis of Management's cross-claims for contractual indemnity, breach of contract, and declaratory relief.  Rather, it is Gumarang's alleged breach of the Lease's indemnity provision by refusing to defend and indemnify Management against claims arising out of Gumarang's use or occupancy of the Property that gives rise to those claims.

Gumarang relies on *Long Beach Unified School Dist. v. Margaret Williams, LLC* (2019) 43 Cal.App.5th 87 (*Williams*) and *Lennar Homes of California, Inc. v. Stephens* (2014) 232 Cal.App.4th 673 (*Lennar Homes*).  Neither decision compels a different result in this case.

In *Lennar Homes*, three homeowners—a single buyer and a married couple—purchased homes from a builder under contracts that contained indemnity clauses.  (*Lennar Homes*, *supra*, 232 Cal.App.4th at pp. 677–678.)  The single buyer and the husband, but not the wife, brought a class action in federal court against the builder, alleging fraudulent nondisclosure and misrepresentation.  (*Ibid*.)  The builder later sued all three of the homebuyers, including the wife, for express contractual indemnity, seeking, among other things, to recover attorney fees and costs from defending the federal lawsuit.  (*Id*. at p. 678.)

18

The homebuyers filed an anti-SLAPP motion against the builder's claims. (*Id.* at p. 677.)

The trial court granted the motion, and the reviewing court affirmed. (*Lennar Homes*, *supra*, 232 Cal.App.4th at p. 677.) Notably, the builder did not dispute that the single buyer and the husband engaged in protected activity. (*Id.* at p. 680.) Instead, the primary issue was whether the wife, who was not a party to the federal litigation, was on the same footing as her husband. (*Ibid.*) The reviewing court concluded, "no matter how the claim [against the wife] is characterized, it is indisputable that [the builder's] claim is 'based on' the federal court litigation brought by [her husband]." (*Id.* at p. 684.) The court explained, that "but for" the single buyer's and the husband's federal litigation, which were brought in part on the wife's behalf, the builder's claim "against [the wife] would have no basis." (*Ibid.*) The court concluded "all three defendants adequately showed that [the builder's] claim against them arises from protected activity." (*Id.* at pp. 684–685.)

Like *Mooradian* and *Wong*, we decline to follow *Lennar Homes*, which was decided before the California Supreme Court clarified in *Park* and *Wilson* how to properly determine whether claims arise out of protected activity under section 425.16. (*Mooradian*, *supra*, 43 Cal.App.5th at p. 703; *Wong*, *supra*, 43 Cal.App.5th at p. 366.) Thus, the court in *Lennar Homes* did not employ *Park*'s elements based analysis, nor did it "consider whether the wrongful act giving rise to an express indemnity claim for purposes of the first prong of section 425.16 was the filing of the underlying action or the refusal to honor the contractual indemnification obligation." (*Mooradian*, at p. 703; see also *Wong*, at p. 366.)

19

*Williams* involved a contract dispute between a school district and the construction manager it hired. (*Williams*, *supra*, 43 Cal.App.5th at pp. 90–92.) After the district terminated the contract, the construction manager sued, alleging the termination was retaliatory. (*Ibid.*) The district filed a cross-complaint against the construction manager, claiming the manger breached the indemnity provision in the parties' contract when the manager refused to defend the district against the manager's lawsuit. (*Ibid.*) The trial court granted the construction manager's anti-SLAPP motion. (*Id.* at p. 96.)

Relying on *Lennar Homes*, the reviewing court affirmed, concluding the district's cross-claims for defense and indemnity "would have no basis without the Underlying Action in which it seeks to be defended and indemnified." (*Williams*, *supra*, 43 Cal.App.5th at p. 98.) Even if the district's cross-claim did not arise out of the construction manager's filing of the underlying lawsuit, the court in *Williams* explained, it nevertheless arose out of the manager's protected activity under section 425.16, subdivision (e)(4). (*Williams*, at pp. 98–99.) Specifically, the court concluded that the construction manager's lawsuit involved a matter of public interest, and the manager's refusal to fund the district's demand for defense and indemnity was conduct in furtherance of petitioning activity. (*Id.* at p. 99.)

We also decline to follow *Williams*. Like *Lennar Homes*, *Williams* did not employ *Park*'s analysis for determining whether a claim arises from protected activity. In addition, *Williams* is distinguishable from this case. Unlike the construction manager's lawsuit in *Williams*, Gumarang's claims against Management do not implicate any matters of public interest.

In sum, Management's cross-claims for contractual indemnity, breach of contract, and declaratory relief concerning Gumarang's obligations to defend and indemnify Management under the Lease do not arise from protected activity. We therefore need not decide whether Management demonstrated a probability of prevailing on those cross-claims.

### 1.3. Management failed to cross-appeal from the court's order granting in part Gumarang's anti-SLAPP motion

In its respondent's brief, Management devotes substantial discussion arguing the court erred in granting Gumarang's anti-SLAPP motion as to Management's first three causes of action for comparative indemnity and apportionment of fault, total equitable indemnity, and the first cross-claim for declaratory relief. However, Management never filed a cross-appeal from the court's anti-SLAPP order. Management, therefore, cannot challenge the court's order granting Gumarang's anti-SLAPP motion as to the first three causes of action in its cross-complaint. (*Celia S. v. Hugo H.* (2016) 3 Cal.App.5th 655, 665 [to obtain affirmative relief on appeal, the respondent must file a notice of appeal and become a cross-appellant].)

### 2. The court did not abuse its discretion when it denied Gumarang's request for attorney fees under section 425.16

Gumarang next contends the court abused its discretion when it denied his request for attorney fees under section 425.16, subdivision (c), after finding he was not a prevailing cross-defendant under the statute. First, Gumarang argues he is a prevailing cross-defendant because his anti-SLAPP motion was partially successful and provided him a practical benefit going forward in this litigation. Second, Gumarang argues he is

entitled to attorney fees because Lessor dismissed all its cross-claims against him after he filed his anti-SLAPP motion. As we explain, the court did not abuse its discretion when it denied Gumarang's attorney fees motion.

### 2.1. Appealability

As a threshold matter, Gumarang asserts the order denying his request for attorney fees against Lessor and Management is appealable. Lessor and Management do not address this issue.

Section 425.16, subdivision (i) states that "[a]n order granting or denying a special motion to strike shall be appealable under Section 904.1" (*Ibid*.) Likewise, section 904.1, subdivision (a)(13), provides that an appeal may be taken from "an order granting or denying a special motion to strike under Sections 425.16 and 425.19." (*Ibid*.) Neither statute expressly states that an order denying or granting a motion for attorney fees under section 425.16 is appealable.

We conclude the order denying Gumarang's request for attorney fees in this case is appealable. Generally, an interlocutory order denying a motion for attorney fees that is entered after an order denying or granting an anti-SLAPP motion is not appealable. (*Doe v. Luster* (2006) 145 Cal.App.4th 139, 145–150.) But " 'where, as here, the issue of whether the anti-SLAPP motion should have been granted is properly before the appellate court, it would be absurd to defer the issue of attorney fees until a future date, resulting in the probable waste of judicial resources. When the first issue is properly raised, appellate jurisdiction over both issues under section 425.16, subdivision (i) is proper.' " (*Workman v. Colichman* (2019) 33 Cal.App.5th 1039,

1055, fn. 7, quoting *Baharian-Mehr v. Smith* (2010) 189 Cal.App.4th 265, 275.)

We therefore turn to the merits of Gumarang's challenge to the order denying his request for attorney fees under section 425.16, subdivision (c).

### 2.2. Applicable law and standard of review

Under section 425.16, subdivision (c), a prevailing cross-defendant is " 'entitled to recover [its] attorney's fees and costs.' " The purpose of the attorney fees provision is to "provide the SLAPP defendant financial relief from the plaintiff's meritless lawsuit." (*Ross v. Seyfarth Shaw LLP* (2023) 96 Cal.App.5th 722, 732 (*Ross*).)

While " 'the term "prevailing party" must be "interpreted broadly to favor an award of attorney fees to a partially successful defendant[,]" . . . a fee award is not required when the motion, though partially successful, was of no practical effect.' " (*City of Colton v. Singletary* (2012) 206 Cal.App.4th 751, 782.) A party who partially prevails on an anti-SLAPP motion generally will be considered a prevailing party " 'unless the results of the motion were so insignificant that the party did not achieve any practical benefit from bringing the motion.' " (*Ibid.*)

Whether a partially successful cross-defendant achieved a sufficient benefit to qualify as a prevailing party lies within the broad discretion of the trial court, and we review that determination accordingly. (*Ross, supra,* 96 Cal.App.5th at p. 732.) As we explain, the court did not abuse its discretion in finding Gumarang was not a prevailing cross-defendant under section 425.16 because he did not receive any practical benefit from bringing the motion.

23

### 2.3. Analysis

In denying Gumarang's attorney fees motion, the court found Gumarang did not obtain any practical benefit from dismissing the cross-complaint's first three causes of action because the factual landscape of the parties' litigation and Gumarang's possible recovery against Management did not change.  The court also found Gumarang's anti-SLAPP motion did not meaningfully reduce the case's legal issues because the legal theories that underpinned the dismissed cross-claims also support several of the affirmative defenses asserted in Management's answer to Gumarang's second amended complaint.  The record supports the court's findings.

In its cross-complaint, Management alleges that Gumarang is liable for the damages from the destruction of the Property that gives rise to the claims in his lawsuit.  The cross-complaint's first three causes are premised on legal and equitable principles independent of the Lease, while the surviving causes of action are based on the parties' rights and obligations under the Lease.  Despite these differences, the first three causes of action do not involve any factual allegations that are not included in the four surviving causes of action.  That is, the surviving four causes of action incorporate all the factual allegations from the three causes of action that were dismissed.  The only difference between the two sets of causes of action is that the surviving four are dependent on the terms of the Lease.  Gumarang does not explain how he narrowed the scope of the factual allegations at issue in the parties' litigation by eliminating the cross-complaint's first three causes of action.  (See *Moran v. Endres* (2006) 135 Cal.App.4th 952, 954–955 [defendants did not obtain a sufficient benefit from their partially successful anti-SLAPP

24

motion to justify an attorney fee award because "[t]he factual allegations defendants faced were not changed when the cause of action for conspiracy was stricken"].)

Gumarang also does not explain in meaningful detail what other practical benefits he received from dismissing the cross-complaint's first three causes of action. For instance, Gumarang does not assert his potential liability under the cross-complaint has decreased, or his potential recovery under his second amended complaint has increased, now that those cross-claims have been dismissed. Although Gumarang asserts that he "is no longer subject to an assessment of his alleged Comparative Indemnity with [Management]," and he is no longer "required to defend against, or incur liability for, [Management's] 'Total Equitable Indemnity' . . . Cross-Claim," he does not explain, in practical terms, how eliminating those issues will change his potential liability or recovery, or any other issues involved in the parties' litigation.

Indeed, in its answer to Gumarang's second amended complaint, Management asserted as affirmative defenses many of the theories at issue in the dismissed cross-claims, including apportionment of fault, comparative fault, and comparative indemnity. Gumarang never demurred to, or otherwise challenged, Management's answer. Accordingly, most of the theories underlying the dismissed cross-claims remain at issue in this case as potential affirmative defenses to Gumarang's second amended complaint.

In addition, Gumarang essentially acknowledges in his attorney fees motion and his opening brief on appeal that the dismissal of the cross-complaint's first three causes of action did not materially affect the parties' litigation. That is, in arguing

25

why he should be entitled to recover fees and costs associated with prosecuting his entire anti-SLAPP motion, Gumarang asserts that all seven of the cross-complaint's causes of action "are 'so intertwined that it would be impracticable, if not impossible, to separate the attorney's time into compensable and noncompensable units.' . . . Except for the Lease, Gumarang submitted substantially the same evidence as to all cross-claims[, and] . . . [t]he extensive analyses of California law apply to all seven cross-claims."

Finally, the court did not abuse its discretion when it found that Gumarang was not entitled to attorney fees because Lessor dismissed its cross-claims against him while his anti-SLAPP motion was pending. A court retains discretion to award attorney fees to a cross-defendant under section 425.16 when a cross-complainant dismisses its cross-claims before the court rules on the cross-defendant's anti-SLAPP motion. (*Coltrain v. Shewalter* (1998) 66 Cal.App.4th 94, 107.) Because the cross-defendant's goal in filing an anti-SLAPP motion is to eliminate the cross-complainant's claims, ordinarily the cross-defendant will be the prevailing party in this scenario. (*Ibid*.) But the cross-complainant may show that it substantially achieved its goals through a settlement or for other reasons unrelated to the probability of success of the cross-defendant's anti-SLAPP motion. (*Ibid*.)

Here, Lessor presented evidence that it dismissed its cross-claims because Gumarang's insurer accepted its tender for defense and indemnity under the Lease. On this record, the court could find that Lessor achieved what it sought to accomplish through its cross-claims before the court could rule on Gumarang's anti-SLAPP motion. The court, therefore, did not

26

abuse its discretion when it denied Gumarang's request for attorney fees to the extent it was based on Lessor dismissing its cross-claims while Gumarang's anti-SLAPP motion was pending.

In sum, the court did not abuse its discretion when it denied Gumarang's request for attorney fees under section 425.16, subdivision (c).

## DISPOSITION

The orders denying in part Gumarang's anti-SLAPP motion and denying Gumarang's request for attorney fees are affirmed. Respondents shall recover their costs on appeal.


VIRAMONTES, J.


WE CONCUR:


GRIMES, Acting P. J.


WILEY, J.

Filed 4/3/2025

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ALLAN GUMARANG, <br><br> Plaintiff, Cross-defendant and Appellant, <br><br> v. <br><br> BRAEMER ON RAYMOND, LLC, et al., <br><br> Defendants, Cross-complainants and Respondents. | B323083, B325256 <br><br> (Los Angeles County Super. Ct. No. 20STCV09118) <br><br> **ORDER CERTIFYING OPINION FOR PUBLICATION** <br><br> **[No change in judgment]** |

THE COURT:

The opinion in the above-entitled matter filed on March 5, 2025, was not certified for publication in the Official Reports.  For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.

There is no change in the judgment.

_____

GRIMES, Acting P. J.      WILEY, J.      VIRAMONTES, J.